# CHARLESTON.

## SNOOKS *v.* WINGFIELD.

Submitted January 15, 1903.   Decided March 21, 1903.

1. DEED—*Description of Property.*
    When a deed describes the property thereby conveyed as real estate situated in a certain town and known on the plat of said town as Lot No. 30, Block 7, the identity of the plat may be shown by parol evidence, and, when shown, the plat becomes a part of the deed as fully as if it were set out in it. (p. 444).

2. DEED—*Construction—Court.*

   Construction of the terms used in a deed, aside from extraneous evidence, is for the court.  (p. 444).

3. DEED—*Description of Property.*

   Application of the description in a deed to the land is for the jury, and parol evidence is admissible to aid in making the application, but it cannot be used to enlarge the description.  (p. 445).

4. QUESTIONS OF FACT—*Court.*

   When a question occurs before a court of law, whether certain evidence is competent or not, the determination of which depends on certain preliminary facts, those facts must be decided by the court.  (p. 446).

5. EJECTMENT—*Land Title—Evidence.*

   When, in an action of ejectment predicating a claim of title solely upon a deed referring to a plat, there is sufficient evidence of the identity of the plat to show *prima facie* that it is the one so referred to, and there is no evidence to the contrary, the court should construe the deed as if the plat were incorporated in it, and rule accordingly upon the admissibility of oral evidence offered.  (p. 448).

6. BILL OF *EXCEPTION—Error.*

   A bill of exception to the action of the court in excluding evidence offered is not available as ground of error, unless it shows that the evidence was, or would have become relevant, material and important.  (p. 448).

Writ of error and *supersedeas* to Circuit Court, Randolph County.

Action by O. P. Snooks against T. Wingfield, *et als.*  Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

J. WM. HORMAN AND J. P. SCOTT, for plaintiff.

HARDING & HARDING AND E. D. TALBOT, for defendant.

POFFENBARGER, JUDGE:

Jonas Kisamore, being the owner of certain lands in Randolph County, a portion of which lay in a bend of Gandy creek, laid off said portion into town lots, and had a plat thereof made, dated August 10, 1894.  The town was called Whitmer, and the

Dry Fork Railroad runs through it on a course almost north and south in or along a street called Railroad Avenue. This street runs straight from the creek at one point to the creek at another point, so that a considerable portion of the town lies between it and the creek in the bend. At the south end of this street, and on the west side, is located lot 30 in block 7, and bounded on the north by lot 31, on the east by Railroad Avenue, on the southwest by Gandy creek, and on the west by an avenue. The northern boundary line is one hundred, the eastern one hundred and five, the western thirty-five feet, while the distance it runs along the creek is not given. At this point the Dry Fork Railroad makes a curve out of the street up along the creek, leaving a strip of land between it and the creek unplatted. The plat does not appear ever to have been recorded. By deed, dated October 20, 1894, Kisamore conveyed to O. P. Snooks, for a consideration, as recited in the deed, of fifty dollars, said lot 30, describing it as follows: "All the following described real estate situated in the town of Whitmer in the county of Randolph, State of West Virginia, and known on the plat of said town as lot No. 30, block No. 7, said lot running a straight line from lot 31 to the creek running back one hundred feet to an alley in the rear." Later, April 7, 1897, Kisamore conveyed to Mrs. Hannah Wingfield a portion of the unplatted land lying between the railroad and Gandy creek and just across Railroad Avenue from lot No. 30. On the same day he conveyed to Isaac N. Graves another portion of said unplatted land, and, on May 20, 1898, Graves conveyed this to Thomas B. Crittendon.

O. P. Snooks, claiming under his deed, brought an action of ejectment against Wingfield and Crittendon for practically all of the unplatted land lying between the railroad, the creek and Railroad Avenue. His contention is that Wayne Kisamore, son and agent of the grantor, who delivered the deed, at the time of its delivery, went with him to the northeastern corner of lot 30 and represented to him that the eastern line of the lot, instead of running straight with Railroad Avenue to the creek as shown on the plat, ran in a southeasternly direction from the corner of lots 30 and 31 in a straight line touching the railway right of way to a snag or stump standing in the edge of the creek, a distance of several hundred feet from said corner. The point claimed by him, as shown by the report of the surveyor is

three hundred and seventy feet distant. Young Kisamore testifies that, before that time, he had shown Snooks the plat. Snooks denies this. Kisamore says he did go to the lot and point out the lines to Snooks, but not that he showed him the plat at that time. Snooks puts S. K. Nelson on the stand as a witness who corroborated him as to the representations made by Wayne Kisamore. Snooks also claims to have paid one hundred and forty dollars for the lot, and insists upon this as evidence in his favor because it is more than the lot is worth as bounded by the lines of the plat. Against this, Kisamore contends that he had contracted the lot to Joseph Verzi and that the sale was made to Snooks by Verzi, and the deed executed to Snooks by direction of Verzi. Evidence was also introduced tending to show that Kisamore had admitted that he had conveyed to Snooks all the land bounded by the river and lot 30. Bearing upon these contentions, there is contradictory evidence relating to the existence of a road where Railroad Avenue is laid down on the plat in front of lot 30.

There are ten assignments of error, all of which practically turn upon two questions; first, whether the plat offered in evidence is sufficiently identified as the plat of the town referred to in the deed; and second, whether the plat, if so identified, forms a part of the deed. F. A. Parsons, witness for defendants, testified that a blue print of a plat offered in evidence by the defendant was made from a plat made by him August 10, 1894, from his survey in laying off the town of Whitmer. There is no contention so far as the record shows that any other plat of said town was made prior to the date of the deed to Snooks or at any other time. The court sustained the objection of the plaintiff to the introduction of this plat as evidence. This was error. In the absence of contradictory evidence, the testimony of Parsons was sufficient to show that it was the plat of the town. This having been established, that plat became a part of the deed, as much as if it had been incorporated in the deed, and the lines on the plat, bounding lot 30, limited the conveyance to Snooks, and his title, to the lines of the plat, as perfectly as if those lines had been specifically set down in the deed, and oral evidence was inadmissible to extend that title or the bounds of the lot beyond the lines laid down on the plat. The construction of the deed is matter of law for the court and cannot be left to

the jury. As the plat was identified by Parsons, and there was no evidence tending to show that it was not the plat referred to in the deed, the court should have ruled on questions relating to the admissibility of evidence, on the assumption that the plat was a part of the deed. While the identity of the plat is a question for the jury, the jury is bound to find upon that question according to the evidence. And it was competent for the court to so instruct the jury. Moreover, as it had been shown *prima facie* that the plat was a part of the deed, it was the duty of the court to exclude all evidence offered for the purpose of contradicting the deed, or setting up title under it to lands not included in the description given in the deed and plat.

When a plan of premises is referred to in the grant or deed, it becomes, by legal construction, a part of the grant ordered, and is not explainable by evidence *aliunde* any further than if inserted in the deed or grant. Hutch. Land Title, sec. 517. "A map or plat referred to in a deed, to fix a boundary, is regarded as a part of it." *Id.* "A lot on a town plat numbered and so described in the conveyance, makes the plat a part of the conveyance." *Id.*, citing *Dolde* v. *Vodicka,* 49 Mo. 100; *McClintock* v. *Rogers,* 11 Ill. 279; *Mayo* v. *Mazeaux,* 38 Cal. 442. "When a grant or deed refers to a certain plan, such plan, becomes, by legal construction, a part of the deed, and is not explainable by extraneous evidence any further than it would be if actually inserted in the deed." *Kennybeck Purchase* v. *Tiffany,* 1 Greenleaf, 219, (10 Am. Dec. 60); *McCall* v. *Davis,* 56 Pa. St. 431, (94 Am. Dec. 92). "The boundaries, monuments, courses, and distances laid down on a map referred to are as much to be regarded the true descriptions of the land as if they were expressly recited in the deed." 1 Jones Real Prop. Conv. sec. 424; *Railroad Co.* v. *Commissioners,* 14 Gray 553; *Erskine* v. *Moulton,* 66 Me. 276; *Ambrose* v. *Raley,* 58 Ill. 506. "If a deed describes the property conveyed as a lot of land in a town 'known and described on the official map of said town as Block No. 6,' the map may be identified by parol evidence, and when identified, constitutes a portion of the deed." *Penry* v. *Richards,* 52 Cal. 496; *Caldwell* v. *Senter,* 30 Cal. 542; *Vance* v. *Force,* 24 Cal. 435; 3 Wash. Real Prop. 367. If the plat can be identified, it is immaterial whether the grantee had actual

notice of it. Why should he have such notice of it any more than of every stake, tree and other monument called for? He accepts the deed with the reference in it, incorporating the plat, and is deemed to have notice of it.

"The construction of the terms used in a deed, aside from extraneous evidence is for the court." Jones Real Prop. Conv., sec. 339. "The question of the application of a description to its proper subject matter is for the jury, who may have the aid of all competent extrinsic evidence. The question of the identity of the location is always one of fact, for the jury." *Id.* "Parol evidence is admissible to apply the description to the parcel intended to be conveyed, when the terms used in the deed leave it uncertain what property was intended to be embraced in it. Such evidence cannot be used to enlarge the scope of the descriptive words, but only to fit them to the land intended to be described." *Id.* Plaintiff based his claim of title solely on the deed, as he was bound to do, and then endeavored to change the written description by parol evidence. This he could not do. He acquired title by that instrument to no land except what falls within its description, for title to land can only pass by deed, will or descent.

Having thus settled the principles governing the case, they must be applied to the rulings of the court to which exceptions were taken. It is first contended that the plaintiff's deed was not admissible because variant from the declaration. This is untenable for the reason that the plaintiff is not bound to recover all the land described in his declaration, nor is it necessary that the boundaries of the deed and declaration correspond in all respects. If the land described in the deed can be located by parol evidence within the calls of the declaration and consistently therewith, the deed is admissible. The parol evidence introduced with the deed in this case shows that this may be done. A witness was asked what lots adjoining lot 30 were selling at, and was permitted to answer over the objection of the defendant. This evidence was introduced to support the claim of Snooks to land outside of lot 30 as bounded by the plat on the theory that he had paid more money than lot 30 was worth and must have thought he was getting more land. The objection should have been sustained and the evidence excluded. The same witness was permitted to testify over the ob-

jection of the defendants that the board walk on Railroad
Avenue does not run past lot 30 but goes to the corner of lots
30 and 31 and then turns off at right angles, or about so, to-
ward the railroad, thus indicating that Railroad Avenue does
not run along the side of lot 30. This was evidence tending
to contradict the plat as to the existence of Railroad Avenue,
a monument of the boundaries of lot 30 as shown by the plat.
It should have been excluded. Another exception is to the ac-
tion of the court in refusing to allow the plat to be introduced.
Of course, this exception is well taken. Defendants attempted
to show by Verzi that Kisamore had first contracted the sale of
lot 30 to him and he had resold it to Snooks and directed the
deed to be made to him, by way of rebuttal of the contention of
Snooks that he had paid Kisamore more money than lot 30
was worth. All testimony on that subject for both parties was
irrelevant and the court properly sustained plaintiff's objection
to this evidence. There is another reason why this exception is
not well taken. The bills of exception do not show what it was
proposed to show by the testimony of Verzi. An exception to
the refusal of the court to permit the introduction of evidence
is not available unless it is made to appear that the rejected evi-
dence was, or would have been, relevant, material and import-
ant. *Maxwell* v. *Kent,* 49 W. Va. 542; Hogg's Plead. & Forms,
428. The bills of exception here show only the questions pro-
pounded to Verzi, omitting to show what it was expected his
answers would be. This rule has been ignored in nearly all the
bills of exception in this case. By bill of exception No. 6, it ap-
pears that the court refused to permit Wayne Kisamore to
answer the question, "What was it that Joseph Verzi directed
you to make a deed to O. P. Snooks for?" The exception is not
well taken, first, because it does not appear what would have
been shown in answer to the question, and second, because it
seems to relate to the matter of purchase money which is irrele-
vant. The same bill of exceptions sets forth four other questions
propounded to Kisamore in reference to the plat. As to the sub-
ject matter, these questions were proper, but it does not appear
what it was expected the witness would answer. Hence, the ex-
ceptions cannot be sustained. The same objection applies to
bill of exceptions No. 8. Bill of exception No. 10 shows that
the plaintiff was permitted to testify that, in selling a part of

lot 30 to J. W. Phleger, whose deed called for a beginning point on Railroad Avenue, he fixed the point on the line contended for by him east of Railroad Avenue. This was evidence of conduct on the part of Snooks, consistent with his claim and inconsistent with his deed. It should have been excluded. Bill of exceptions No. 11 was taken against the action of the court in overruling a motion to strike out evidence of Snooks in relation to the location of Railroad Avenue different from that shown by the plat, which motion should have been sustained, for the reasons given in the discussion of the plat as part of the deed. T. Wingfield, a defendant, being recalled in his own behalf, was asked if Snooks had pointed out to him the location of the Phleger lot and whether he located it above or below Railroad Avenue. To this question, the objection of the plaintiff was sustained. The subject matter of the question is immaterial and it does not appear what the answer would have been. Hence, the exception is not well taken. Another exception is, to the refusal of the court to permit the defendants to ask Snooks while on the stand to read to the jury, from the deed executed by him to Phleger, the description of the land thereby conveyed. The deed was in evidence and it was unnecessary to have the witness to repeat to the jury the description contained in it, even if it had been relevant and material. But the execution of that deed and the description contained in it were matters between Snooks and Phleger, in no way determining or affecting the question of what land was included in Snooks' deed for lot 30. Hence, it was immaterial and irrelevant. The last assignment of error is based upon the action of the court in refusing to set aside the verdict and grant a new trial. Enough has been said to clearly show that the verdict is contrary to the evidence, and is wholly unsupported by competent evidence. It gives the plaintiff land not included within the calls of his deed, and this verdict is based entirely upon oral testimony inconsistent with, and in direct contradiction of the description of the land set forth in the deed and plat. The court erred in refusing to set aside the verdict.

To this disposition of the assignments of error, and declaration of the legal principles upon which it proceeds, it may be objected that we make the circuit court decide the whole case in passing upon the admissibility of evidence, but it must be re-

membered that the question of admissibility is always for the decision of the court, although the decision of a preliminary question may virtually end the case. This case well illustrates the folly of allowing a jury to determine the issue upon incompetent evidence. Every such verdict must be set aside at the end of the trial. Is it not more just as well as consonant with reason to rule out such evidence so that the finding must be upon competent evidence? Here a finding against the identity of the plat would be flatly contrary to all the evidence on that subject and could not stand, for there is no evidence tending the other way. In holding the plat to be admissible and to be part of the deed, the court does just what the jury would have been bound to do, under the state of the evidence. The determination of this fact, whether by the court or jury governs the whole trial of the case thereafter. When the plat is read with the deed as a part of it, the plaintiff's right to recover is limited to its calls and he is not allowed to enlarge them upon mere oral testimony. The court must decide upon the admissibility of evidence, even when, in order to do so, it is obliged to examine and pass upon questions of fact. Thomp. on Trials, sec. 318. "The court must decide upon the competency of title papers, and the right to use them, and, incidentally, under what title the party entered." *Carrico* v. *McGee,* 1 Dana (Ky.) 5. "When a question occurs before a court of law, whether certain evidence is competent or not, the determination of which depends on certain preliminary facts, those facts must be decided by the court." *Clayton* v. *Anthony,* 6 Rand. 285.

Plaintiff seems to have wholly misunderstood the nature of the action of ejectment. It is not the remedy for reformation of instruments, correction of mistakes or relief on the ground of fraud.

For the reasons aforesaid, the judgment must be reversed, the verdict of the jury set aside, a new trial granted, and the cause remanded to the circuit court of Randolph County for further proceedings according to the principles here announced, and, further, according to law.

*Reversed and Remanded.*